**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SEVERONICKEL,
Plaintiff-Appellee,

v.

No. 96-1000

GASTON REYMENANTS; KOLA
INTERNATIONAL LIMITED
ESTABLISHMENT,
Defendants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-95-448-AMD)

In Re: GASTON REYMENANTS; KOLA
INTERNATIONAL LIMITED

No. 96-1240

ESTABLISHMENT,
Petitioners.

On Petition for Writ of Mandamus.
(CA-95-448-AMD)

Argued: January 28, 1997

Decided: June 11, 1997

Before HALL, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Dismissed by published opinion. Judge Luttig wrote the majority
opinion, in which Judge Williams concurred. Judge Hall wrote a dis-
senting opinion.

**COUNSEL**

**ARGUED:** Michael Evan Jaffe, ARENT, FOX, KINTNER, PLOT-KIN & KAHN, Washington, D.C., for Appellants. Richard Edwin Dunne, III, HOGAN & HARTSON, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Melissa Callahan Lesmes, ARENT, FOX, KINTNER, PLOTKIN & KAHN, Washington, D.C., for Appellants. John G. Roberts, Jr., Amy Folsom Kett, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

Defendants Gaston Reymenants and Kola International Limited Establishment appeal the district court's order remanding plaintiff Severonickel's breach of contract action to Maryland state court. Because the district court remanded the case to the state tribunal because it appeared to the court that it lacked federal subject matter jurisdiction, we in turn lack jurisdiction over the appeal from that order. 28 U.S.C. § 1447(d). We therefore dismiss.

I.

Pursuant to an oral contract entered by the Russian corporation Severonickel and the Liechtenstein business organization Kola International, which is managed and controlled by the Belgian citizen Gaston Reymenants, Reymenants and/or Kola was to serve as Severonickel's broker for the sale of approximately 800 tons of Severonickel's nickel powder warehoused in Baltimore. In November 1994, believing that Reymenants and Kola (hereinafter "Reymenants") had failed to pay Severonickel for approximately $3 million worth of nickel powder and to account for sales and return any unsold powder, Severonickel filed a breach of contract claim against Reymenants and Kola in Maryland Circuit Court. After several months of discovery disputes, Reymenants removed the case to the United States District Court for the District of Maryland under 9 U.S.C. § 205, which authorizes removal of state court actions "relat[ing] to an arbi-

2

tration agreement . . . falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208.

Severonickel thereafter moved for a remand to state court, arguing that the underlying dispute arose out of an oral nickel powder contract which did not itself include an arbitration clause and which was not subject to any arbitration agreement, and therefore that there was no federal jurisdiction over the breach of contract claim. Reymenants conceded that the nickel powder contract between Severonickel and Reymenants did not itself include an arbitration provision. Reymenants contended, however, that the dispute was nonetheless subject to the arbitration clause in an April 22, 1992, "tolling contract" between the parties, by operation of a September 9, 1993, Protocol ("Protocol") between Reymenants and a subsidiary of Severonickel, which incorporated the nickel powder agreement and made the Protocol an "integral part" of the tolling contract. Thus, Reymenants argued that disputes under the nickel powder contract are governed by the arbitration agreement because the Protocol incorporates the nickel powder agreement, the Protocol is part of the tolling contract, and the tolling contract provides for arbitration of disputes arising under the tolling contract.

The validity of both the tolling contract and the Protocol, as well as the relationship among the agreements, was contested before the district court. The tolling contract, which allegedly includes the arbitration clause, was never introduced into evidence because Reymenants argued that a "confidentiality agreement" prevented its introduction, and Severonickel declined to stipulate even to the contract's existence, much less to its validity. The validity of the Protocol was drawn into question because it was never signed by Severonickel. Reymenants asserted that Kola ABC, which did sign the Protocol, was an agent of Severonickel, but he based that alleged agency relationship in part on the tolling contract, which he refused to introduce into evidence.

Following a full hearing at which these issues were argued, the district court granted Severonickel's motion to remand to state court, reciting that the court lacked subject matter jurisdiction over the dispute. The district court remanded the case without prejudice, so as, in

3

its view, not to foreclose removal to federal court in the future should it appear that federal jurisdiction would lie. Reymenants appealed.

## II.

Appellate review of district court orders remanding removed cases to state courts is barred by 28 U.S.C. § 1447, which provides inter alia that such orders are "not reviewable on appeal or otherwise" if the district court remanded the case on the ground that "it appear[ed] [to the district court] that the district court lack[ed] subject matter jurisdiction." 28 U.S.C. § 1447(c) & (d); see Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 346 (1976) (limiting section 1447(d) to "remand orders issued under § 1447(c) and invoking the grounds specified therein").[1]

Here, it cannot reasonably be disputed that the district court remanded this case to state court because it appeared to the court that it lacked subject matter jurisdiction over the controversy. The court's short, one-page written order reads as follows:"[T]his Court concludes that the removal of this action was demonstrably improvident, and that therefore subject matter jurisdiction is lacking in this case." J.A. at 124 (emphasis added). The order further recites that "this case is REMANDED, without prejudice, to the Circuit Court for Baltimore City, for lack of jurisdiction." Id . (emphasis added). And the court ordered that "the CLERK of the court CLOSE [the] case." Id.

Were there any doubt that the district court dismissed the case because it appeared to the court that it lacked subject matter jurisdiction, such doubt is put to rest upon even a cursory review of the court's comments from the bench during the hearing on the motion to remand. At the hearing, the court derided Reymenants' jurisdictional argument as resting on "what appears to be just the thinnest of

_____

[1] 28 U.S.C. § 1447(d) provides in full: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise." We are not concerned in this case with section 1447(d)'s exception for cases removed pursuant to section 1443.

4

conceivable bases," "far too thin a basis for this Court to exercise jurisdiction," J.A. at 117 -- namely, the "rather maze like" relationship between the "secret arbitration agreement," which Reymenants refused to proffer, and the other agreements, "one of which [was] not even signed" by Severonickel. J.A. at 93. The court concluded that "federal jurisdiction, frankly, doesn't seem close on the record as it now exists, doesn't seem close. Doesn't seem close." J.A. at 93; see also id. at 115 ("[T]he jurisdictional basis is, at best, thin and ethereal."). The court even said that it was "able to say[,] on the basis of the record as it now exists[,] with fair assurance, [that] there is no binding arbitration agreement" between the parties. J.A. at 117.

Thus, contrary to Reymenants' suggestion, it is apparent that the express language of the district court's order that it was dismissing the case for lack of subject matter jurisdiction was anything but "rote incantation," see Reply Br. at 7. Quite clearly, "the actual ground[ ] or basis upon which the district court considered[that] it was empowered to remand," see Mangold v. Analytic Services, Inc., 77 F.3d 1442, 1450 (4th Cir. 1996), was that it appeared to the court that it lacked subject matter jurisdiction.

Notwithstanding the clarity of the district court's order, the equally unambiguous confirmation of the court's intention in its remarks from the bench, and the fact that the district court nowhere even so much as mentions abstention, Reymenants argues that the court actually did not dismiss the case for lack of subject matter jurisdiction; rather, it "abstained" from exercising its "jurisdiction" to decide whether it had subject matter jurisdiction,**2** as evidenced by the fact that it did not

_____

**2** Because Reymenants must argue not only that we have appellate jurisdiction, but also that the district court erred in its remand, in order to prevail, it repeatedly casts this argument as one that the district court "failed to exercise its jurisdiction to determine" whether the dispute was arbitrable. This formulation preserves Reymenants' argument that the district court had jurisdiction under section 205 immediately upon the removal; that it was required to exercise that jurisdiction to decide the arbitrability question because there were no permissible grounds for abstention; and that, because the court did not decide arbitrability, its remand was in error. This formulation also has the incidental (or, perhaps, not-so-incidental) effect of misfocusing the dispositive inquiry

5

decide whether in fact the nickel powder dispute was arbitrable and even suggested that Reymenants might establish arbitrability on remand and then reattempt removal.

Were we forced to decide, as Reymenants would have us do, whether the district court decided to abstain altogether from addressing the question of the nickel powder agreement's arbitrability or whether the court instead decided that in fact no arbitration agreement exists, we would unhesitatingly conclude, from its order and bench comments, that the court decided that no arbitration agreement exists. This is a false choice, however, because the district court actually decided neither, at least in the sense urged by Reymenants. It is clear from the court's order and comments that it did not simply "decline to exercise its jurisdiction . . . in the interest of `judicial economies and efficiencies that cannot otherwise be achieved,'" see Appellant's Br. at 11; indeed, for the reasons explained, it is plain that the court exercised its jurisdiction to determine whether it had jurisdiction over this dispute. It is just as clear from the court's comments concerning the possibility of a later removal attempt that the court did not determine that in fact no arbitration agreement exists. **3** Rather, the court decided based upon the record then before it, and by resolving all

---

from the actual basis for the district court's remand, to the arbitrability vel non of the contractual dispute. Because, in this context, arbitrability is determinative of federal jurisdiction, however, the questions of whether the court abstained from exercising conceded jurisdiction to determine arbitrability and whether the court abstained from exercising jurisdiction to determine whether it had subject matter jurisdiction, are one in the same.

**3** The district court may well have been mistaken in its observation that Reymenants might be able to remove the case again, following additional discovery in state court. See, e.g., Appellant's Reply Br. at 2 ("[I]f the court had made the arbitrability determination, then Reymenants . . . would not have the opportunity to petition for a second removal; the case would either be in arbitration or in state court, to remain in state court."); see also St. Paul & Chicago Railway Co. v. McLean, 108 U.S. 212, 217 (1883); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 492 (5th Cir. 1996). Whether the court was correct on this score or not, however, has no bearing on the question of the court's basis for remanding the case to state court.

doubts as to its jurisdiction in favor of remand as required, only that Reymenants failed to carry his burden of establishing the existence of a valid and applicable arbitration agreement which would support federal jurisdiction. This was the question the court was required to decide, and the only question it was required to decide. And at least in this case, where the party upon whom the burden of establishing federal jurisdiction rests refused to proffer the document that he contended established federal jurisdiction and the second document purportedly necessary to that jurisdiction was not even signed by the opposing party, that decision, even in the absence of further discovery, is unassailable. Cf. In re Business Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993) (holding that district court did not abuse its discretion in ordering remand without sua sponte granting a hearing to determine whether there was an ERISA plan triggering federal jurisdiction).**4**

Even had the court not determined the arbitrability of the dispute (in the only sense that mattered), we still would be without jurisdiction to review the district court's order of remand. For, in that event,

_____

**4** Contrary to Reymenants' argument, 9 U.S.C. § 4 did not require the district court to hold a trial on the arbitrability of the parties' dispute. Section 4, which provides that "[i]f the making of [an] arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof," applies, as the district court below noted, only where the district court would have jurisdiction over the dispute even in the absence of the arbitration agreement. As the first sentence of the section provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 , in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Here, absent the arbitration agreement alleged to exist by Reymenants, there would be no possible basis for federal jurisdiction, as the underlying breach of contract claim raised no federal question and the parties agree that there is no diversity jurisdiction.

7

it would not follow that the court did not dismiss the action on the ground that it appeared to the court that it lacked subject matter jurisdiction, as Reymenants vigorously asserts. It would follow, at most, only that the court erred in its determination that it lacked subject matter jurisdiction (or more precisely, that it erred in the manner in which it undertook the jurisdictional inquiry). However, as the Supreme Court has made clear, and as we have held,"[w]here the order is based on one of the enumerated grounds[in section 1447(c)], review is unavailable no matter how plain the legal error in ordering the remand." Briscoe v. Bell, 432 U.S. 404, 414 n.13 (1977); see Mangold, 77 F.3d at 1450 (stating that if the district court invoked the grounds specified in § 1447(c), the order is unreviewable "even if it be manifestly, inarguably erroneous"). Were it otherwise, there would occur the very "delay in the trial of remanded cases by protracted litigation of jurisdictional issues," see Thermtron, 423 U.S. at 351 (citation omitted), which it was Congress' purpose in enacting section 1447(d) to avoid.

The district court having remanded this case on the ground that it appeared to that court that it lacked subject matter jurisdiction, we are without jurisdiction over this appeal. Accordingly, the appeal is dismissed for lack of appellate jurisdiction.

DISMISSED

HALL, Circuit Judge, dissenting:

I believe that we have jurisdiction to review this remand order and that the remand was in error. Accordingly, I respectfully dissent.

I.

In deciding whether 28 U.S.C. § 1447(d) deprives us of jurisdiction to review a remand order, our focus must be on what the district court actually did, and not just on what it says it did.

> [P]owerful policy considerations and persuasive decisional authority support our power -- and responsibility-- to look past contextually ambiguous allusions and even specific

8

citations to § 1447(c) to determine by independent review of the record the actual grounds or basis upon which the district court considered it was empowered to remand. ...

[Here], despite evident confusion and some backing and filling during the process, the district court remanded in the end not on the assumption that there was a "lack of jurisdiction" so that a remand was compelled, but that though there was jurisdiction, there was discretion to remand. It is settled that when a district court remands on such a basis, § 1447(d) does not bar appellate review.

Mangold v. Analytic Services, Inc., 77 F.3d 1442, 1450-1451 (4th Cir. 1996). See also Quackenbush v. Allstate Insurance Co., 116 S.Ct. 1712, 1718-1720 (1996) (abstention-based remands are appealable "collateral orders").

The majority exaggerates the "clarity" of the district court's written order. Here is that order in its entirety, with my emphasis added:

For the reasons stated on the record in open court after a hearing on December 13, 1995, this Court concludes that the removal of this action was demonstrably improvident, and that therefore subject matter jurisdiction is lacking in this case. The Court expresses no view as to whether further proceedings in state court might disclose a plausible basis for the removal of this action to federal court pursuant to 9 U.S.C. §205 (authorizing removal "at any time before the trial thereof" of any case involving [an] international commercial dispute subject to [the] "Convention on the Recognition and Enforcement of Foreign Arbitral Awards"). Accordingly, it is this 14th day of December, 1995, by the United States District Court for the District of Maryland, ORDERED:

1) That this case is REMANDED, without prejudice, to the Circuit Court for Baltimore City, for lack of jurisdiction;

9

> 2) That the CLERK of the court CLOSE this
> case;
>
> 3) That the CLERK of the court MAIL copies
> of this order to counsel of record.

Thus, the district court invited scrutiny of its remarks in open court, and it "expresse[d] no view" about whether there actually is an agreement to arbitrate subject to the Convention.

The hearing had been scheduled to resolve competing motions concerning a discovery deadlock. At the hearing, the district court abruptly changed the subject to whether the case should be remanded immediately, without resolving the question of arbitrability. Counsel for Severonickel expressed doubts:

> [Mr. DUNNE, counsel for Severonickel:] Let me begin, if you don't mind, with the last thing you and Mr. Jaffe [counsel for Reymenants/Kola] were discussing, and I am not trying to be flip[pant], but it may be the only thing that Mr. Jaffe and I seem to agree on because I am inclined to agree with his point of view on the question of his right to a trial and the obligation of the federal court in circumstances like this to have a trial, if there are legitimate disputes of fact, on the question of whether or not a contract to arbitrate exists.
>
> And there is a very clear dispute on that. Mr. Jaffe says there was and points to a couple of things. We say there was not and say that those things don't apply to this particular arrangement. And there are clear, sharp disputes of fact. If when we are applying conventional summary judgment standards, I think it would be difficult on the record before us at this point, which ... doesn't even include the Tolling agreement, to rule one way or the other. And I think the statute does grant jurisdiction to the federal court, and indeed requires the federal court to exercise jurisdiction at a minimum to decide the question of whether there is a contract --

10

THE COURT: You read the statute to require the federal court to exercise jurisdiction to the extent of having a trial?

MR. DUNNE: On the very narrow issue, is there an agreement --

THE COURT: On the issue of whether there is an agreement to arbitrate?

MR. DUNNE: Written agreement to arbitrate.

A few moments later, counsel reiterated:

So Mr. Jaffe and I agree on this point. If there is a disputed fact on that, it would perhaps be error for the Court to decline to resolve it. And if it requires discovery, both sides should have access to it.

Nonetheless, the district court declined to resolve the arbitrability issue:

[H]ere we sit a year ... after the case has been filed when apparently, according to [Severonickel's] argument, the matter was moving to a posture in state court where things were going to start happening on the merits. And when I say the merits, I mean a decision was going to be made whether or not this case is one for judicial determination or arbitral determination. And so all of these factors, it seems to me, suggest[ ] that we don't throw open the federal courts on this kind of basis for use by a party not in any manner [a]ffected with the federal interest to employ the courts in its processes through some tactical strategic way to gain advantage in litigation.

And so I sit here as a judge, a trustee of a precious public resource, this courtroom, that must be available to all litigants, however far they come to get here who properly are here. And Congress has made it very clear. I don't see any-

11

thing in the cases or in the statute affording this rather curious open-ended removal right to suggest we are to throw open the doors to the federal courts for this kind of use on these kinds of facts. And I suggest that my earlier observation that the fact of the matter is discovery is going to take place in this case. It is either going to take place in federal court or state court. If, in fact, despite Mr. Jaffe's legitimate concerns about such things, it turns out that [Severonickel] is bound by that arbitration provision, what is going to happen is that the case is either going to go to arbitration from state court or it will take a short and quick detour back to this court and then go to arbitration.

Later, the court mused that "federal jurisdiction, frankly, doesn't seem close on the record as it now exists," but "[t]hat is not to say that when discovery is completed, in fact there won't be a determination properly made that indeed [Severonickel] is bound by this secret arbitration agreement[.]"

Though counsel for the parties continued to attempt to dissuade the district court, the court stated that it believed it had the discretion to remand the case.**1** The court announced that it intended to remand, and the short written order already quoted was entered.

On the whole record, I think it quite clear that the court declined to exercise jurisdiction in its discretion, i.e. it abstained. Abstention-based remands are appealable "collateral orders." Quackenbush, 116 S.Ct. at 1718-1720.

_____

**1** The court stated:

> [Counsel] are suggesting that I don't have the discretion to [remand] short of discovery, and I am suggesting to you that I very much have the discretion to determine on a case-by-case basis the propriety under this peculiar provision of the removal law whether that discovery will take place in this court or in state court.

12

II.

I now turn to the merits of the remand order. Because of the peculiar interplay between arbitrability and jurisdiction here, several of the points already discussed are again relevant.

Under the Federal Arbitration Act, a district court that would otherwise have jurisdiction under Title 28 over litigation between the parties may, on application of one of them, enter an order compelling arbitration. If the arbitrability of the dispute is at issue -- on either the ground that the parties have no arbitration agreement or that the dispute is not within the agreement's scope --"the court shall proceed summarily to the trial thereof." 9 U.S.C.§ 4 (emphasis added).

Ordinarily, there is no jurisdiction in federal court over an action between foreign entities. However, if the parties have agreed to arbitrate the dispute, the Convention applies, and Congress has provided a federal forum:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. Furthermore, there is a broad provision allowing for the removal of suits brought in state court, even those, like this one, in which a good deal of litigation has already taken place:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. ...

13

9 U.S.C. § 205. Finally, the general provisions of the Federal Arbitration Act apply to actions under the Convention except where they conflict with it. 9 U.S.C. § 208.

Kola/Reymenants argues that 9 U.S.C. § 4 therefore applies, and the district court must exercise jurisdiction to determine whether the dispute is subject to arbitration. As I quoted in the fact section above, Severonickel agreed with this position below. It now has "seen the light." Severonickel now argues that because the district court would not otherwise have jurisdiction of the suit under Title 28, it need not decide arbitrability.[2] This ends up being a chicken-and-egg problem. If the dispute is subject to the Convention, then 9 U.S.C. § 203 provides that it arises under the laws and treaties of the United States, i.e. there is federal question jurisdiction. If the dispute is not subject to the Convention, there is no such jurisdiction. In other words, unlike the typical Federal Arbitration Act case, arbitrability is the basis for jurisdiction.

Consequently, it cannot be said that the district court has jurisdiction under Title 28 until it is first decided that the dispute is arbitrable, but 9 U.S.C. § 4 would literally require this jurisdiction to be present before the court decides arbitrability.

I think that the only way to harmonize these statutes in a way that makes any sense is to require the district court to decide arbitrability, i.e. to recognize that it has the mandatory jurisdiction to examine its own jurisdiction. The Convention, at 9 U.S.C. § 208, incorporates the provisions of the Arbitration Act "to the extent that [they are] not in conflict" with it. I would deem § 4's requirement of a federal jurisdictional basis independent of arbitrability to be just such a conflict.

I would vacate the order of the district court and remand with instructions to permit discovery on and resolve the question of arbitrability.

_____

2 The majority espouses this position in dicta. Supra at 7 n.4.

14