**UNDERPINNING & FOUNDATION SKANSKA, INC., Plaintiff,**

v.

**BERKLEY REGIONAL INSURANCE COMPANY, Defendant.**

**Berkley Regional Insurance Company, Third–Party Plaintiff,**

v.

**Board of Commissioners of the Belgrave Water Pollution Control District, Third–Party Defendants.**

**No. 07CV2758 (ADS)(ARL).**

United States District Court, E.D. New York.

Oct. 20, 2009.

Peckar & Abramson, P.C., by Alan H. Winkler, Esq., Richard Seth Robinson, Esq., of Counsel, New York, NY, for plaintiff Underpinning & Foundation Skanska, Inc.

Goldson, Nolan, Connolly, P.C., by June Connolly, Esq., of Counsel, Hauppauge, NY, for defendant, third-party plaintiff Berkeley Regional Insurance Company and attorneys for non-party W.H.M. Plumbing & Heating Contractor, Inc.

Ackerman, Levine, Cullen & Brickman, LLP, by James A. Bradley, Esq., of Counsel, Great Neck, NY, for third party defendant Board of Commissioners of the Belgrave Water Pollution Control District.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I. BACKGROUND

This case arises out of a dispute concerning a construction project at the Belgrave Water Pollution Control Plant, a plant owned by Third–Party Defendant Belgrave Water Pollution Control District ("Belgrave"). As part of an effort to improve the Water Pollution Control Plant's facilities, in 2002 Belgrave retained an engineering firm, Cameron Engineering and Associates, LLP ("Camer-

on") to design a concrete pile foundation for a new clarifier tank to be built at the plant. In September 2005, Belgrave contracted with W.H.M. Plumbing & Heating Contractors, Inc. ("WHM") to serve as prime contractor responsible for, among other things, construction of this pile foundation. In connection with WHM's retention as prime contractor on the project, in September 2005, WHM, as principal, and Defendant Berkley Regional Insurance Co. ("Berkley"), as surety, executed and delivered to Belgrave a Labor and Material Payment Bond in the amount of $5,880,000 (the "Payment Bond"). Also, in October 2005, WHM retained Underpinning & Foundation Skanska, Inc. ("Underpinning") as subcontractor to install the individual piles for the foundation. The parties agree that, while WHM and Underpinning constructed some or all of the pile foundation (a structure with a pile foundation generally rests on numerous concrete pillars driven deep into the ground), the work on the pile foundation was ultimately abandoned in favor of a mat foundation (a structure with a mat foundation instead generally rests on a large concrete slab that sits relatively shallowly in the soil).

On July 9, 2007, Underpinning filed suit in this Court against Berkeley under the terms of the Payment Bond. Underpinning alleges in its complaint that it performed its contract and incurred additional expenses, but WHM underpaid Underpinning by the sum of $206,340.00. As Berkeley is surety under the terms of the Payment Bond, Underpinning alleges that Berkeley is liable for WHM's underpayment. The Court exercised jurisdiction over this case pursuant to diversity jurisdiction provided by 28 U.S.C. § 1332, as Underpinning is a New York citizen, Berkeley is a Delaware citizen, and the amount in controversy exceeded the sum of $75,000.

On January 16, 2009, Berkeley moved for leave to implead Belgrave as a third-party defendant pursuant to Fed.R.Civ.P. 14(a). The Court granted Berkeley's motion on June 2, 2009, and Berkeley filed a third-party complaint against Belgrave on June 9, 2009, seeking indemnification from Belgrave for any amounts Underpinning should recover

from Berkeley in this matter. The Court continued to exercise jurisdiction over the case pursuant to its powers of supplemental jurisdiction provided by 28 U.S.C. § 1367 ("Section 1367"). Underpinning and Belgrave are both New York entities, but Berkeley's claims against Belgrave forms part of the same case or controversy that is alleged in Underpinning's claim against Berkeley. In addition, Berkeley's claims do not fall into any of the exceptions to supplemental jurisdiction enumerated in Section 1367(b).

According to Berkeley's third-party complaint, Underpinning built a pile foundation for the project after being retained by WHM. However, Belgrave rejected the foundation as off-specification and withheld partial payment from WHM, who in turn withheld partial payment from Underpinning. Berkeley claims the pile foundation was off-specification only because of faulty design and direction from Cameron, Belgrave's on-site representative and inspector. Berkeley therefore claims Belgrave is indirectly liable to Underpinning, as its performance on the contract would have been complete if not for the malfeasance of Cameron, Belgrave's agent. Berkeley alleges, among other things, that Cameron was present on-site as Underpinning drove the piles, and that Cameron prematurely instructed Underpinning to stop driving the each pile, leaving the piles too shallow. Berkeley also alleges that Cameron improperly inspected and accepted piles that Belgrave later rejected. In addition, Berkeley alleges that Belgrave and Cameron conspired to withhold from Berkeley and WHM admissions by Cameron of its mistakes related to the pile foundation. Based on this and other threats, Belgrave and Cameron allegedly coerced WHM into entering into an agreement to remove the pile foundation and build the mat foundation at WHM's sole expense.

Currently before the Court are (1) WHM's motion to intervene as a defendant and assert counter-claims against Underpinning, pursuant to Fed.R.Civ.P. 24(b), and (2) WHM's motion to join Cameron as a necessary party, pursuant to Fed.R.Civ.P. 19, or, in the alternative, to join Cameron as a per-

missive party pursuant to Fed.R.Civ.P. 20. Both motions are unopposed.

## II. DISCUSSION

### A. WHM's Rule 24(b) Motion

WHM is moving to intervene in this matter pursuant to Fed.R.Civ.P. 24(b) to answer Underpinning's complaint and assert counterclaims against Underpinning. The Court therefore must consider the requirements for permissive intervention under Fed.R.Civ.P. 24.

Fed.R.Civ.P. 24 provides in pertinent part:

(b) Permissive Intervention.

(1) In General. On timely motion, the court may permit anyone to intervene who:

. . .

(B) has a claim or defense that shares with the main action a common question of law or fact.

. . .

(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

In applying Fed.R.Civ.P. 24(b), the Second Circuit has held that, for permissive intervention to be granted, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *R Best Produce, Inc. v. Shulman–Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir.2006) (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal quotations omitted)).

Pursuant to Fed.R.Civ.P. 24(c), and to assist the Court in this analysis, WHM submitted, with its Rule 24 motion, a pleading setting out the claims and defenses for which WHM's intervention is sought. In this pleading, WHM alleges—as does Berkeley—that Belgrave and Cameron rejected the pile foundation Underpinning built, and for this reason, Belgrave withheld partial payment to WHM. However, WHM does not allege whether or not Belgrave, Cameron, or Underpinning is at fault for the rejection of the pile foundation, but only that WHM incurred significant costs removing the pile foundation and replacing it with a mat foundation.

■ In light of the fact that Belgrave was impleaded as a party to this litigation on June 9, 2009, and noting that no party has raised an issue related to the timing of WHM's motion to intervene, the Court finds WHM's motion to intervene to be timely. Further, given WHM's integral and unique role in the construction of the foundation in question, the Court finds that WHM has an interest in the litigation that may be impaired by the disposition of the action, and that this interest is not likely to be protected adequately by the other parties present. For these reasons, and because the Court believes that WHM's intervention will not unduly delay or prejudice the adjudication of the original parties' rights, the Court grants WHM's motion to intervene as a defendant.

■ While WHM, like Underpinning, is a New York citizen, the Court has supplemental jurisdiction over WHM's answer to Underpinning's complaint under the provisions of Section 1367. This section provides for the Court's jurisdiction over claims between non-diverse citizens that are "part of the same case or controversy" as the claims over which the Court has original jurisdiction. WHM's answer to Underpinning's complaint deals by definition with the same case and controversy Underpinning raised in its original action, so there is no exception to the Court's jurisdiction with regard to WHM's answer in Section 1367(b), which limits the general grant of supplemental jurisdiction found in Section 1367(a). The Court's jurisdiction over WHM's answer is therefore proper, and WHM's motion to intervene as a defendant does not impair the Court's jurisdiction.

There is, however, some question as to whether the Court would have subject matter jurisdiction over WHM's proposed counterclaims against Underpinning. Section 1367(b) precludes supplemental jurisdiction for claims brought by non-diverse plaintiffs intervening pursuant to Rule 24. *See Siteworks Contracting Corp. v. Western Sur. Co.*, 461 F.Supp.2d 205, 210–211 (S.D.N.Y. 2006) (precluding supplemental jurisdiction over the counterclaims of a general contractor seeking to intervene as a nominal defendant pursuant to Fed.R.Civ.P. 24(b) in an action brought by the general contractor's sub-contractor against the general contractor's surety). However, and the Court is not convinced that the holding is *Siteworks* is consistent with the Circuit's pronouncements with regard to jurisprudence on this issue. *See* discussion, *infra.*, at II.B of *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721 (2d Cir. 2000) and *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007). Moreover, in reviewing the record, the Court does not believe that WHM's primary purpose in intervening in this action is the assertion of affirmative claims against Underpinning. Indeed, WHM does not affirmatively allege in its complaint any wrongdoing by Underpinning. The Court therefore holds that the Court has subject matter jurisdiction over WHM's counterclaims against Underpinning pursuant to Section 1367(a).

**B. WHM's Rule 19 Motion**

■ WHM has also moved to join Cameron as a necessary party to this litigation pursuant to Fed.R.Civ.P. 19, and seeks to assert claims against Cameron. WHM has filed with its motion a "third party complaint" against Cameron (more properly termed a fourth party complaint, as Belgrave is already the third party in this litigation), seeking indemnification from Cameron for any damages Underpinning recovers from WHM and asserting claims for, among other things, economic coercion, fraud, and libel.

As a threshold matter, the Court notes that it does not depend upon WHM's motion to join Cameron as the impetus for its determination to join Cameron in this case, as a trial court may consider the joinder of a party under Rule 19 *sua sponte. MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*, 471 F.3d 377, 382–383 (2d Cir. 2006) (citing *Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d Cir.1994)). However, regardless of whether a party or the Court raises the issue, the Court must conduct a three-part analysis concerning Cameron's joinder. The Court considers (1) whether Cameron is a necessary party and should be joined, (2) whether Cameron's joinder is feasible and will not deprive the Court of subject matter jurisdiction, and (3) whether, if Cameron is a necessary party but joinder is not feasible, the court may in equity and good conscience, allow the action to proceed with the existing parties. *See, Viacom Intern., Inc.*, 212 F.3d at 724–25; Fed. R.Civ.P. 19.

Fed.R.Civ.P. 19 provides that a party is necessary to an action when:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a); *see also, Viacom Intern., Inc.*, 212 F.3d at 724.

Here, Cameron allegedly (i) designed the pile foundation in question, (ii) directly supervised its installation, and (iii) inspected the individual piles as they were completed. Cameron is thus alleged to be intimately involved in this dispute, and more than one party has already pointed an accusing finger at Cameron. In addition, according to WHM's motion papers, Cameron and Belgrave are currently engaged in litigation in New York State Supreme Court, Nassau County, concerning this same nexus of facts. For these reasons, the Court finds Cameron to be a necessary party to this litigation.

The Court next considers whether Cameron's joinder is feasible. In particular, the Court considers whether Cameron's joinder would "deprive the court of subject-matter jurisdiction," rendering joinder not feasible. Fed.R.Civ.P. 19(a)(1). Unfortunately, as the District of Connecticut has noted in a recent decision, "the law in this area, which had been very clear, is now quite obscure." *Gibbs Wire and Steel Co., Inc. v. Johnson,* 255 F.R.D. 326, 328 (D.Conn.2009).

Section 1367(a) provides the basis for supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction" over claims between non-diverse parties that "form part of the same case and controversy." Here, WHM and Cameron are both New York citizens (as are Underpinning and Belgrave), and are therefore not diverse. However, WHM's claims against Cameron form part of the same case and controversy that was raised by Underpinning's original action against Berkeley—a claim over which the Court had original jurisdiction—thus creating a basis for the Court's supplemental jurisdiction over WHM's claims against Cameron.

However, Section 1367(b) provides exceptions to this grant of supplemental jurisdiction, excluding, among other things, claims "by plaintiffs against persons made parties under Rule ... 19 ... of the Federal Rules of Civil Procedure." Here, WHM would be a plaintiff—albeit a fourth-party plaintiff—and therefore jurisdiction over its claims against Cameron is arguably improper because the claims fall under the Section 1367(b) exception for claims brought by plaintiffs. Some courts, however, have held that the "plaintiff" in Section 1367(b) refers only to the *original* plaintiff in the action. *See Denver NMR, Inc. v. Front Range Mobile Imaging, Inc.,* No. 08-cv-02695-KMT-BNB, 2009 WL 1538080, *4 (D.Colo. June 1, 2009) (citing to opinions in several other jurisdictions). Indeed, the Second Circuit's opinion in *Viacom* appears to reach this same conclusion. *Viacom,* 212 F.3d at 726–27 ("Significantly, § 1367(b) reflects Congress' intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity."). Thus, if this

holding in *Viacom* were still the law of the Circuit, the Court would have supplemental jurisdiction over WHM's claims against Cameron. *But, cf., Siteworks Contracting Corp.,* 461 F.Supp.2d at 210–211 (holding that *Viacom* does not restrict "plaintiff" in Section 1367(b) to the original plaintiff).

However, the Second Circuit revisited *Viacom* after the Supreme Court decided *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Reviewing the Supreme Court's opinion, the Second Circuit determined that it had held that there are additional "limitations on joinder in certain circumstances that may well extend beyond the restrictions listed in § 1367(b)." *Merrill Lynch & Co. Inc.,* 500 F.3d at 179. In *Merrill Lynch,* a non-diverse third party defendant had been joined pursuant to Fed.R.Civ.P. 19, and the court addressed whether there was supplemental jurisdiction over counterclaims by this third party defendant against the plaintiff in the action. *Id.* The *Merrill Lynch* court held there was not. *Id.* In doing so, the court stated:

> The Supreme Court does not define the reach of the contamination theory and does not purport to announce a new standard for assessing diversity defects but instead relies on the Court's consistent construction of the complete diversity rule. However, even if we read *Exxon* as preserving certain well-established exceptions to the complete diversity rule ..., [the third party defendant's] joinder does not fall within any such exception. A leading practice treatise says "parties that are joined under Rules 19 and 20 ... must independently satisfy the jurisdictional requirements." 13B Wright et al., supra, § 3608, at 454; *see also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 108, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (noting that joinder of non-diverse defendant under Rule 19(a) destroys jurisdiction); *Haas v. Jefferson Nat'l Bank of Miami Beach,* 442 F.2d 394, 396 (5th Cir.1971) (same).

*Id.* (some internal citations omitted).

Thus, it appears that the Second Circuit has not repudiated its holding that "plaintiff"

in Section 1367(b) refers only to the original plaintiff, but rather has held that there exists a general exception to supplemental jurisdiction for all non-diverse parties joined pursuant to Fed.R.Civ.P. 19 and 20. Because the Court's supplemental jurisdiction under *Merrill Lynch* does not extend to any claims against a non-diverse party joined pursuant to Fed.R.Civ.P.19, and because WHM and Cameron are non-diverse parties, the Court would have no supplemental jurisdiction over WHM's claims against Cameron. The Court therefore finds that Cameron's joinder in this case is not feasible.

Because Cameron is a necessary party and its joinder is not feasible, Fed R. Civ. P. 19(b) requires the Court to consider whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). Fed.R.Civ.P. 19(b) provides that, in determining this, the Court must consider:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*See, also, Bartfield v. Murphy,* 578 F.Supp.2d 638, 650 (S.D.N.Y.2008) ("Rule 19(b) instructs the Court to consider a non-exclusive list of factors, including the extent a judgment rendered in the party's absence might be prejudicial to the person or those already parties; the extent to which protective provisions in the judgment, the shaping of relief, or other measures can lessen or avoid prejudice; whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.")

In the Court's view, a judgment rendered in this case in Cameron's absence has a strong likelihood of being unfair, inadequate, and potentially prejudicial to Cameron. The pleadings of Berkeley and WHM take aim directly at Cameron, and due to Cameron's unique role in the construction project, the Court does not believe any other party would adequately represent Cameron's interests. Nor does the Court believe it feasible to fashion a judgment that would protect Cameron's interest in its absence. At the same time, the parties have an accessible forum to pursue this matter in the New York State Supreme Court. Four of the five parties concerned with this case (Underpinning, Belgrave, WHM, and Cameron) are New York citizens, and the fifth, Berkeley, is a close neighbor in Delaware. In addition, WHM has represented that there is a current action between Cameron and Belgrave related to this nexus of facts pending in Nassau County Supreme Court. Thus, the Court determines that it cannot, under the law and in good conscience, continue this action in the absence of Cameron.

Because Cameron is a necessary and indispensable party, the Court need not consider WHM's motion, in the alternative, to join Cameron pursuant to Fed.R.Civ.P. 20.

In the interest of judicial economy, the Court would prefer to join all relevant parties and remand the case to state court. Unfortunately, as this case was originally filed in Federal District Court, it cannot be remanded to state court. *Akwesi v. Uptown Lube & C/W, Inc.,* No. 07 Civ. 335(NRB), 2007 WL 4326732, *3 (S.D.N.Y. Nov.30, 2007) (" '[a] case originally filed in federal court cannot be remanded to state court.' *Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 75 Fed.Appx. 903 (4th Cir.2003) (citing *First Nat'l Bank of Pulaski v. Curry,* 301 F.3d 456, 461 (6th Cir.2002)). Remand is only proper if a case has been removed from state court."). However, under these circumstances, New York CPLR § 205 allows the parties to recommence suit in New York State court within six months without regard to statutes of limitations. *See also Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 281 (S.D.N.Y.2007) (holding

that the six-month statute of limitations toll provided by CPLR § 205 precluded prejudice against parties whose state law claims were dismissed for lack of subject matter jurisdiction.) The Court therefore reluctantly dismisses the action without prejudice pursuant to Section 1367(b), so all necessary parties can be joined in one action—namely, the current action in New York Supreme Court in Nassau County or a new action in New York Supreme Court.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that WHM's motion to intervene pursuant to Fed.R.Civ.P. 24(b) is GRANTED;

**ORDERED,** that WHM's motion to join Cameron pursuant to Fed.R.Civ.P. 19 is DENIED; and

**ORDERED,** that this case is DISMISSED WITHOUT PREJUDICE pursuant to Fed. R.Civ.P. 19(b).

The Clerk of the Court is ordered to close this case.

**SO ORDERED.**